## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH CAMMATTE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-926** |
| **BURL CAIN, WARDEN, LSP** | **SECTION: "H"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITHOUT PREJUDICE**.

Petitioner, Joseph Cammatte, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On July 14, 2011, he was convicted of second degree murder under Louisiana law.[1] On August 10, 2011, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] The Louisiana Fifth Circuit Court

---

[1] State Rec., Vol. 3 of 9, transcript of July 14, 2011, p. 93; State Rec., Vol. 1 of 9, minute entry dated July 14, 2011; State Rec., Vol. 1 of 9, jury verdict form.

[2] State Rec., Vol. 3 of 9, transcript of August 10, 2011; State Rec., Vol. 1 of 9, minute entry dated August 10, 2011.

of Appeal affirmed his conviction and sentence on September 11, 2012,[3] and the Louisiana Supreme Court denied his related writ applications on October 26, 2012,[4] and April 5, 2013.[5]

In the interim, petitioner filed an application for post-conviction relief with the state district court.[6]  That application was denied on April 16, 2013.[7]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on June 20, 2013,[8] and by the Louisiana Supreme Court on February 7, 2014.[9]

Petitioner thereafter filed the instant federal application seeking *habeas corpus* relief.[10] The state has filed a response conceding that the application was timely but arguing that it should be dismissed because petitioner failed to exhaust his remedies in the state courts.[11]  The state is correct.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted).  The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.  Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution.  Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches

---

[3] State v. Cammatte, 101 So.3d 978 (La. App. 5th Cir. 2012); State Rec., Vol. 5 of 9.
[4] State *ex rel.* Cammatte, 99 So.3d 644 (La. 2012); State Rec., Vol. 5 of 9.
[5] State v. Cammatte, 110 So.3d 1075 (La. 2013); State Rec., Vol. 5 of 9.
[6] State Rec., Vol. 5 of 9.
[7] State Rec., Vol. 5 of 9, Order dated April 16, 2013.
[8] State v. Cammatte, No. 13-KH-440 (La. App. 5th Cir. June 20, 2013); State Rec., Vol. 5 of 9.
[9] State *ex rel.* Cammatte v. State, 131 So.3d 857 (La. 2014); State Rec., Vol. 5 of 9.
[10] Rec. Doc. 3.  Although petitioner filed the federal application on or about April 16, 2014, this case was not opened until he paid the required filing fee in July of 2015.
[11] Rec. Doc. 14.

> that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

Therefore, for the federal exhaustion requirement to be met, "a petitioner must have fairly presented the substance of his claim[s] to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988). Accordingly, to determine whether the instant federal claims are exhausted, this Court must compare those claims to the ones petitioner presented to the Louisiana Supreme Court.

In his federal application, petitioner asserts five claims:

1.  The trial court abused its discretion in denying petitioner's motion to suppress his confession;[12]

2.  There was insufficient evidence to support petitioner's conviction;[13]

3.  The jury instructions were erroneous;[14]

4.  "The indictment lacked essential element to inform the defense of the nature and cause of accusation,"[15] and "the state court failed to advise the defense of the

---

[12] Rec. Doc. 3, pp. 5 and 16.
[13] Rec. Doc. 3, pp. 7 and 16.
[14] Rec. Doc. 3, pp. 8 and 16.
[15] Rec. Doc. 3, p. 10.

charges when they failed to provide the defense with a copy of the Bill of Particulars";[16] and

5.      Petitioner's counsel was ineffective for failing to object at trial and to file a motion to quash the defective indictment.[17]

In its response, the state argues that petitioner exhausted his state court remedies with respect to only four of those claims.  Specifically, the state argues that petitioner has never fairly presented his ineffective assistance of counsel claim to the Louisiana Supreme Court.  Again, the state is correct.

Petitioner filed three writ applications with the Louisiana Supreme Court, i.e. those filed in case numbers 2012-KH-1370, 2012-KO-2247, and 2013-KH-1690.  Those writ applications are included in Volume 8 of the state court record.

The writ applications in case numbers 2012-KH-1370 and 2012-KO-2247 were submitted on *direct* review.  They contain no claim of ineffective assistance of counsel.

Rather, petitioner raised his ineffective assistance of counsel claim on *collateral* review.  Specifically, in his post-conviction application, petitioner claimed that his counsel was ineffective for failing to file a motion to quash the indictment and to object to the prosecution's misstatement of the law and use of an inaccurate hypothetical situation during voir dire.  However, he failed to include those claims in his related writ application filed with the Louisiana Supreme Court in case number 2013-KH-1690.   Although he asserted (as he likewise did in his post-conviction application) the *underlying* purported constitutional violations concerning the allegedly defective

---

[16] Rec. Doc. 3, p. 22.
[17] Rec. Doc. 3, p. 16.

indictment and prosecutorial misconduct, that is of no moment.  An ineffective assistance claim, which proceeds on a separate legal theory and is governed by a different legal analysis, is obviously distinct from a claim asserting an underlying substantive violation on which the ineffective assistance claim is based.  See Sam v. Louisiana, 409 Fed. App'x 758, 765 (5th Cir. 2011); Willis v. Vaughn, 48 Fed. App'x 402, 406 (3rd Cir. 2002) ("Willis' ineffective assistance of counsel claims and underlying due process claims are distinct, and exhaustion of one does not constitute exhaustion of the other.").

The only brief references to ineffective assistance counsel which appeared in the writ application at all were in the preliminary "Writ Grant Considerations" section which preceded his memorandum; no ineffective assistance claims were actually asserted or discussed in that memorandum.  Therefore, in order to know of and consider the ineffective assistance claims, the Louisiana Supreme Court justices would have been required to actually read the lower court record to discover them.

That clearly does not suffice for exhaustion purposes.  Instead, claims are considered "fairly presented" only if the justices are not required to comb the lower court record to be aware of the existence of the claims and petitioner's desire for further review of them.  On that point, the United States Supreme Court has expressly held that the exhaustion doctrine's fair presentation requirement is met only where the state's highest court need not "read beyond a petition or a brief (or a similar document)" to find the claim.  Baldwin v. Reese, 541 U.S. 27, 32 (2004).  The Supreme Court held:

> [T]o say that a petitioner "fairly presents" a federal claim when an appellate judge can discover that claim only by reading lower court opinions in the case is to say that those judges *must* read the lower court opinions – for otherwise they would

forfeit the State's opportunity to decide that federal claim in the first instance.  In
our view, federal habeas corpus law does not impose such a requirement.

      For one thing, the requirement would force state appellate judges to alter
their ordinary review practices.  Appellate judges, of course, will often read lower
court opinions, but they do not necessarily do so in every case.  Sometimes an
appellate court can decide a legal question on the basis of the briefs alone.  That is
particularly so where the question at issue is whether to exercise a discretionary
power of review, *i.e.,* whether to review the merits of a lower court decision.  In
such instances, the nature of the issue may matter more than does the legal validity
of the lower court decision.  And the nature of the issue alone may lead the court to
decide not to hear the case. ...

      For another thing, the opinion-reading requirement would impose a serious
burden upon judges of state appellate courts, particularly those with discretionary
review powers.  Those courts have heavy workloads, which would be significantly
increased if their judges had to read through lower court opinions or briefs in every
instance.

Id. at 31-32.  Cf. Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc., 695 F.2d

839, 847 (5th Cir. 1983) ("Judges are not ferrets!").

      Based on the foregoing, it is clear that only four of petitioner's five claims are exhausted.

As a result, his federal application is a mixed petition and should be dismissed without prejudice

on that basis.  Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition

containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed

without prejudice.").

## **RECOMMENDATION**

      It is therefore **RECOMMENDED** that the petition for federal *habeas corpus* relief filed

by Joseph L. Cammatte be **DISMISSED WITHOUT PREJUDICE**.

      A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-first day of December, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**